UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**LARRY BRATTON,**

**Plaintiff,**

**-vs-**                                    **05-CV-950**

**NEW YORK STATE DIVISION OF PAROLE; P.O.
TURNER; P.O. WIJKOWSKI; P.O. JONES; SGT.
HERSON; SGT. VALLEY; OFFICER WATKINS;
and ITHACA POLICE DEPARTMENT,**

**Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Larry Bratton
Plaintiff, *pro se*

Hon. Andrew M. Cuomo, Attorney General of the State of New York
Senta B. Siuda, Esq., Assistant Attorney General
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2465
Attorneys for Defendants Turner, Wijkowski, and Jones

G. Peter Van Zandt, Esq.
53 Chenango Street, Suite 700
Binghamton, New York 13901
Attorney for Defendants Herson, Vallely and Watkins

**Hon. Norman A. Mordue, Chief U.S. District Judge**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

    Presently before the Court are motions for summary judgment by defendants Parole

Officer Turner, P.O. Wijkowski, and P.O. Jones, employees of the New York State Division of

Parole (Dkt. No. 102), and defendants Sgt. Herson, Sgt. Vallely,[1] and Officer Watkins, members of the Ithaca Police Department (Dkt. No. 104), in this civil rights action. This Court previously issued a Memorandum-Decision and Order (Dkt. No. 51) dismissing all claims against New York State Division of Parole and Ithaca Police Department, dismissing the claims against the individual defendants in their official capacities, and otherwise denying dismissal. Thus, the case has gone forward against the individual defendants in their individual capacities. For the reasons that follow, both summary judgment motions are granted in their entirety.

**BACKGROUND**

**Amended Complaint**

Plaintiff commenced this *pro se* action under 42 U.S.C. § 1983 while he was incarcerated in a New York State Correctional Facility after his parole was revoked as a result of the incident underlying this action.[2] According to the amended complaint (Dkt. No. 6), plaintiff had been released on parole on January 14, 2005. Defendant Wijkowski was his parole officer. On February 8, 2005, at around 9 p.m., Wijkowski and an unidentified male (defendant Jones, another parole officer) came to plaintiff's residence. Plaintiff admitted them. Once inside, Wijkowski said he wanted to obtain a urine sample from plaintiff to perform a drug test. The amended complaint states:

> The plaintiff agreed to give the defendant a urine specimen for the test. However, the defendant then disclosed that he did not have a urine test kit, and the plaintiff asked him how did he intend to do a urine test without a

---

[1] The caption of the complaint refers to "Sgt. Valley"; however, the correct name is Edward Vallely.

[2] Plaintiff is not now incarcerated.

-2-

test kit. The defendant ignored the plaintiff and turned and spoke with the person who accompanied him.  Then he directed that person to stay and "watch" the plaintiff while he left.

The plaintiff stated that he did not know the defendant Wijkowski's companion and asked who was he.  However, that person would not identify himself, nor did the defendant Wijkowski attempt to identify him. Consequently, the plaintiff stated that he did not want the unidentified person to remain in his room while the defendant Wijkowski left.

The defendant Wijkowski insisted that the defendant Jones stay in the plaintiff's room and "watch" him, and the defendant Jones ordered the plaintiff to get on his bed.

The plaintiff was uncomfortable with the defendants' instructions and appearance at his residence at night without a urine test kit claiming that they wanted to do a urine test.  Consequently, when the defendant Jones refused to leave with the defendant Wijkowski, the plaintiff, who was in his underwear, got dressed  and said  that since  it  was not  his curfew  and the defendants did not have a test kit, the plaintiff was leaving and would be back before his curfew and the defendant Wijkowski could return when he has a test kit and obtain a specimen.

At or about  the time that the plaintiff was getting dressed, or shortly afterwards, the defendant Wijkowski went into the hallway immediately outside the plaintiff's door and called the Ithaca Police on his cell phone. When he came back into the room he and the defendant Jones tackled the plaintiff, pushed him face down on the bed with his knees on the floor and handcuffed his hands behind his back and said plaintiff was under arrest.

Soon after the defendants Wijkowski and Jones handcuffed the plaintiff, the defendants Herson, Watkins and several other Ithaca police officers arrived, and the defendant Watkins was holding a very large German Shepherd.

(Paragraph numbering omitted, footnotes omitted.)  According to plaintiff, the handcuffs were so

tight that when they were removed his wrists were swollen and bruised.  Plaintiff further alleges

that while plaintiff was kneeling by his bed, handcuffed, Watkins held the dog on a leash within

one or two feet of plaintiff and permitted it to bark and lunge at him.  Plaintiff was taken to a

police car, and Wijkowski, Jones, Watkins, and Herson then used the dog to search plaintiff's

-3-

room for drugs.  As against defendant Vallely, also a member of Ithaca Police Department, plaintiff claims that Vallely received Wijkowski's telephone call to the police department and conspired with the others to send a drug dog to plaintiff's residence to search for evidence of a crime without a warrant or probable cause.

According to plaintiff, he had complied at all times with the conditions of his parole.  He claims the individual defendants conspired to "violate" him on his parole and search his residence without a warrant or probable cause.  Plaintiff, who had a lawsuit pending against Wijkowski at the time, *Bratton v. Baker*, 03-CV-1458 (N.D.N.Y., Hurd, D.J.), alleges that Wijkowski intensely disliked him and was likely to seek retaliation against him.  Plaintiff also alleges that defendant Turner, who assigned Wijkowski to be plaintiff's parole officer, had reason to know these facts but was indifferent to the threat Wijkowski posed to plaintiff.

Briefly summarized, the causes of action in the amended complaint (Dkt. No. 6) are:

First, the conduct of Wijkowski and Jones in coming to plaintiff's residence to intimidate him in retaliation for plaintiff's legal action against Wijkowski violated plaintiff's rights.

Second, the conduct of Wijkowski, Jones, Watkins and Herson in bringing a drug dog to plaintiff's residence and using the dog to threaten and intimidate him violated his Fourth and fourteenth Amendment rights.

Third,[3] the conduct of Wijkowski, Jones, Watkins and Herson in bringing the dog to plaintiff's residence and using it to search without a warrant or probable cause violated plaintiff's Fourth and Fourteenth Amendment rights.

---

[3] There are two "Third" causes of action, but they are virtually identical, so the Court does not summarize the second third cause of action or refer to it separately.

Fourth ("fourth-I"),[4] the actions of defendants Wijkowski, Jones, Watkins and Herson in using excessive force in handcuffing plaintiff and causing him injury violated his Fourth and Fourteenth Amendment rights.

Fifth ("fifth-I"), the actions of Wijkowski, Jones, Watkins and Herson in using the regular processes of their agencies to violate plaintiff's rights was an abuse of process.

Sixth ("sixth-I"), the actions of defendants Wijkowski and Jones in pretending they wanted to visit plaintiff for a urine test when they actually intended to harass and arrest plaintiff without cause was an abuse of process.

Fourth ("fourth-II"), the conduct of Wijkowski and Jones in using their status as parole officers to enter and search plaintiff's room without a warrant or probable cause and in using a dog to search was an abuse of process and violated plaintiff's rights.

Fifth ("fifth-II"), the conduct of Wijkowski, Jones, Watkins and Herson in bringing the dog to plaintiff's residence and using it to search to retaliate against plaintiff for his legal action against Wijkowski violated plaintiff's rights.

Sixth ("sixth-II"), the conduct of Wijkowski, Jones, Watkins, Herson, and Vallely in conspiring to use their status as parole officers and police officers to enter and search plaintiff's room, to retaliate for his action against Wijkowski, and to use a dog to search was an abuse of process and violated plaintiff's rights.

Seventh, the conduct of Wijkowski and Jones in pretending they were there to obtain a urine sample and using their status as parole officers to enter and search plaintiff's room, harass him, and to use a dog to search was an abuse of process and violated plaintiff's rights.

Eighth, the conduct of Wijkowski, Jones, Watkins, Herson, and Vallely in conspiring to use their status as parole officers and police officers to enter and search plaintiff's room and to use a dog to search deprived plaintiff of equal protection.

Ninth, the conduct of Wijkowski, Jones, Watkins and Herson in conspiring

---

[4] There are two fourth, fifth, and sixth causes of action.  The Court refers to them as "fourth-I," "fourth-II," etc.

to use their status as parole officers and police officers to enter and search plaintiff's room, to harass him, and to use a dog to search deprived plaintiff of equal protection.

Tenth, the conduct of Wijkowski, Jones, Watkins and Herson in conspiring to use a dog against the plaintiff violated plaintiff's right to equal protection.

Eleventh, the conduct of Wijkowski and Jones in using excessive force against plaintiff in handcuffing him and thereby injuring him violated his rights under the Fourth and Fourteenth Amendments.

Twelfth, the conduct of Watkins and Herson in failing to prevent Wijkowski and Jones from using excessive force against plaintiff in handcuffing him and thereby injuring him violated his rights under the Fourth and Fourteenth Amendments.

Thirteenth, Wijkowski's conduct in directing Jones to detain plaintiff without a warrant of arrest or probable cause violated plaintiff's First and Fourteenth Amendment rights.

Fourteenth, the conduct of Jones in blocking plaintiff's free movement without a warrant or probable cause violated the First and Fourteenth Amendments.

Fifteenth, Turner's conduct in assigning Wijkowski to supervise plaintiff , knowing of Wijkowski's malice towards plaintiff and the likelihood that he would retaliate deprived plaintiff of equal protection and violated the Fourth and Fourteenth Amendments.

Sixteenth, the conduct of Turner in assigning Wijkowski to supervise plaintiff and in conspiring with Wijkowski to violate plaintiff's rights violated the First, Fourth and Fourteenth Amendments.

Seventeenth, the conduct of defendants in threatening plaintiff with the dog caused plaintiff fear and mental and emotional trauma and violated the Fourth and Fourteenth Amendments.

**Parole revocation proceedings**

It is undisputed that plaintiff's parole was revoked as a result of the February 8, 2005 incident. Transcripts of plaintiff's preliminary parole revocation hearing on February 16, 2005,

-6-

and his final revocation hearing on March 29, 2005, are included in the record.  The transcripts do not make clear what charges were placed against plaintiff, although it appears that charge one alleged plaintiff's failure to comply with the instructions of his parole officer to submit to a urine test; charge two alleged that he refused the instructions of his parole officer to remain in the room and sit on the bed; and charge five alleged resisting arrest.  The Court has not been able to determine on this record what charge or charges were upheld as the ground for the parole revocation.

**Deposition**

In his deposition in this case, plaintiff stated the following: on January 14, 2005, he was released from prison on parole; he occupied a room in a rooming house; on February 8, 2005, he was in his room, in his underwear, when Wijkowski and Jones knocked on his door at about 9 p.m.; Wijkowski identified himself and said he wanted to do a drug test; plaintiff admitted the pair; it transpired that Wijkowski did not have a test kit with him; Wijkowski started to leave and instructed Jones to "stay here" and "watch" plaintiff; and plaintiff became agitated because he "didn't like the idea that [Wijkowski] was telling someone to retain me in my room."  Plaintiff testified that he got dressed and told Wijkowski: "[I]t's 9 and my curfew isn't til 10 and ... since you don't have a kit with you, I was going to go somewhere anyway.... I said you go and get a urine test kit and when you come back, I will be here and you can test me then."  According to his testimony, plaintiff told the officers it was not his curfew and he was going to leave, finished dressing in a corner of the room, and started to move out of the corner, whereupon Jones ordered him to get on the bed.  Plaintiff did not comply but rather "walked at the direction of Mr. Jones"; then Wijkowski and Jones grabbed him, threw him on the bed, and handcuffed him.  At the

deposition, plaintiff refused to answer a number of questions about whether he resisted being handcuffed.  He stated that Wijkowski told him he was under arrest at about the time he was being handcuffed.  Ithaca Police Officers Watkins and Herson arrived, took plaintiff out to the police vehicle, and transported him to the county jail, where they removed the handcuffs.

### *People v. Bratton*

Plaintiff was prosecuted for resisting arrest in connection with the February 8, 2005 incident.  Resisting arrest is defined as intentionally preventing or attempting to prevent a police officer "from effecting an <u>authorized</u> arrest."  N.Y. Penal Law § 205.30 (emphasis added).  Plaintiff was convicted in Ithaca City Court, which held that a parole officer was authorized to make a warrantless arrest of a parolee for a parole violation occurring in his presence during an interview.  Thus, the court reasoned, Wijkowski's warrantless arrest of plaintiff was authorized, and plaintiff's resistance constituted the crime of resisting an authorized arrest.  On plaintiff's appeal, Tompkins County Court upheld the conviction, stating that obtaining a warrant for a parole violation was "not the exclusive avenue for charging a parole violation and effecting an arrest when the offending conduct has occurred in the presence of the parole officer."

On June 12, 2007, New York's high court reversed plaintiff's conviction and dismissed the accusatory instrument.  *See People v. Bratton*, 8 N.Y.3d 637 (2007).  The court held that New York law does not authorize parole officers to carry out warrantless arrests for parole violations, even when the violations are committed in their presence.  Thus, the court concluded, the arrest of plaintiff was not authorized and plaintiff was not guilty of resisting an authorized arrest.

### STANDARD ON SUMMARY JUDGMENT MOTION

Summary judgment is appropriate "where there exists no genuine issue of material fact

and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law."
*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc*., 448 F.3d 573,
579 (2d Cir. 2006) (internal quotation marks omitted).  A dispute about a genuine issue of
material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for
the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining
whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all
inferences, against the movant.  *See United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

## MOTION BY DEFENDANTS TURNER, WIJKOWSKI, AND JONES

Defendants Turner, Wijkowski, and Jones were all employees of the New York State
Division of Parole at the times in question.  Plaintiff asserts a variety of claims against them.
Essentially, plaintiff complains of Wijkowski's and Jones' conduct in coming to his residence,
requesting a urine sample for a drug test, instructing him to remain in his room while Wijkowski
retrieved the test kit, preventing him from leaving, handcuffing him too tightly, threatening him
with the dog, and searching his apartment.  He also alleges his rights were violated by Turner,
who assigned Wijkowski to be plaintiff's parole officer.

**Fourth Amendment**

*Home visit, request for drug test, search of room*

A number of plaintiff's causes of action are based on alleged violations of the Fourth
Amendment's proscription against warrantless searches and seizures.  In evaluating plaintiff's
Fourth Amendment claims, this Court notes that, as a condition of his parole, plaintiff agreed to
home visits by his parole officer, searches of his person and residence, and substance abuse
testing "as directed by" the parole officer.  These conditions of his release, of which he was

aware, severely diminished his expectation of privacy. *See generally United States v. Reyes*, 283 F.3d 446, 461 (2d Cir. 2002).

Further, plaintiff's Fourth Amendment protections were appropriately limited due to his status as a parolee. The duties of the parole system include assisting the parolee in the rehabilitation process, protecting the public, and providing information and recommendations to the court or parole board. *See id*. at 455. These duties present "special needs" beyond normal law enforcement and justify some impingement of the parolee's Fourth Amendment rights. *See United States v. Grimes*, 225 F.3d 254, 258 (2d Cir. 2000) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987)). Such impingements must occur pursuant to a state rule "that itself satisfies the Fourth Amendment's reasonableness requirement." *Id.* (citing *Griffin*, 483 U.S. at 873). In light of these special needs, the Second Circuit has upheld the constitutionality of New York State's scheme permitting a parole search so long as it is "rationally and reasonably related to the performance of [the parole officer's] duty." *Id*. at 258-59 (quoting *People v. Huntley*, 43 N.Y.2d 175, 181 (1977)); *accord United States v. Newton*, 369 F.3d 659, 665-66 (2d Cir. 2004).

Here, Wijkowski went to plaintiff's residence, requested a urine sample, and searched his room after he avoided taking a drug test. These actions were authorized by state rules that satisfy the Fourth Amendment. *See Grimes*, 225 F.3d at 258. It cannot reasonably be argued that these actions were not rationally and reasonably related to the performance of his duty as plaintiff's parole officer. There is nothing in the record which would enable a reasonable factfinder to find a Fourth Amendment violation arising from these actions. Viewed in the light most favorable to plaintiff, the undisputed proof demonstrates that there are no material questions of fact and that Wijkowski and Jones are entitled to summary judgment dismissing the third cause of action

-10-

against them claiming that the home visit, request for urine sample, and search of the residence violated his Fourth Amendment rights.  The fourth-II cause of action is also dismissed insofar as it asserts a similar claim, as is the third cause of action against Wijkowski and Jones based on using the dog to search his room.

_Detention_

The thirteenth cause of action alleges Wijkowski violated plaintiff's rights by directing Jones to detain plaintiff while Wijkowski went to the car for a test kit.  The fourteenth cause of action alleges Jones violated plaintiff's rights by blocking plaintiff's free movement without a warrant or probable cause.  These are best read as claims that in directing him to remain in his room and sit on his bed while Wijkowski retrieved the test kit, Wijkowski and Jones violated plaintiff's fourth Amendment protection against seizure of his person.[5]  There are no material factual disputes regarding this issue; plaintiff himself testified that he was asked to give a urine sample, that Wijkowski did not have a drug test kit, that Wijkowski directed Jones to watch plaintiff while Wijkowski left, that plaintiff dressed and declared his intention to leave, and that, with the purpose of leaving the room, plaintiff walked toward Jones, who was blocking his exit. The amended complaint does not expressly contain a Fourth Amendment seizure claim directly based on Wijkowski's and Jones' actions in seizing plaintiff's person, placing him on the bed, and handcuffing him.

This Court has already noted that the special needs of New York State's parole system justify a limited degree of impingement on a parolee's Fourth Amendment rights.  *See Grimes*,

---

[5]

Plaintiff styles the thirteenth and fourteenth causes of action as First Amendment claims.  It is not clear what aspect of the First Amendment he claims was violated.  The Court finds no First Amendment violation on these facts.

225 F.3d at 258.  The particular conditions of plaintiff's parole – including the requirements that

he submit to searches of his person and to substance abuse testing as directed by his parole officer

– are permissible intrusions into his rights.  Implicit in the requirements that plaintiff submit to a

search of his person and to substance abuse testing is the requirement that he submit to a limited

detention of his person.  Obviously, in order to be searched, plaintiff must stand still for a period

of time, and in order to submit to a urine test, plaintiff must wait a brief time while his parole

officer provides him with a specimen cup.  Thus, a limited detention of his person reasonably

related to carrying out the conditions of plaintiff's parole is well within the permissible degree of

impingement on plaintiff's rights.  Further, the undisputed record facts establish that the

permissible degree of impingement was not exceeded in the incident in question.  Wijkowski's

and Jones' conduct in requesting a urine sample and directing plaintiff to wait while Wijkowski

retrieved the test kit from his car was entirely reasonable and constitutionally permissible.[6]

    In opposition to these motions, plaintiff argues for the first time that Wijkowski's and

Jones' conduct in arresting and handcuffing him amounted to a warrantless arrest that exceeded

their authority as parole officers and amounted to a Fourth Amendment violation.  He relies on

the New York Court of Appeals' decision in *People v. Bratton*, 8 N.Y.2d 637 (2007), which

---

    [6]

Plaintiff's allegation that Wijkowski did not say where he was going does not raise a material
question of fact on this issue.  First, even on plaintiff's version of the facts, it would appear
obvious that Wijkowski was going to get a test kit.  Second, even if it were not obvious, it would
have been a simple matter for plaintiff to ask Wijkowski where he was going; instead, plaintiff
began dressing and, while Wijkowski was still there, declared his intention to leave.  At this point
Wijkowski went into the hall and telephoned the police.  Third, Wijkowski was still right outside
plaintiff's door when plaintiff attempted to pass Jones and leave the room.  In other words, after
Wijkowski gave plaintiff a reasonable direction to wait in his room, plaintiff quickly escalated the
situation into an adversarial one and attempted to leave.  Under all of the circumstances,
accepting plaintiff's version of the facts, the parole officers' conduct met constitutional standards.

-12-

overturned his conviction for resisting arrest stemming from the February 8, 2005 incident, holding that New York law does not authorize a parole officer to arrest a parolee without a warrant for a parole violation committed in his presence.  As such, their seizure of his person was not effected pursuant to a state rule, and thus was not consistent with his Fourth Amendment rights under *Griffin*, 483 U.S. at 873, and *Grimes*, 225 F.3d at 258.

This Court holds, however, that Wijkowski and Jones are protected by qualified immunity for their actions in arresting plaintiff after he tried to leave his room without taking a drug test. Further, if it were found that they exceeded their authority in directing plaintiff to wait in his room with Jones while Wijkowski retrieved the test kit, they are protected by qualified immunity for that conduct as well.  Government officials performing discretionary functions enjoy a qualified immunity shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted).  As explained in *Anderson*: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." 483 U.S. at 640 (citations omitted).

Having found that plaintiff had a Fourth Amendment right to be free from a warrantless

arrest by his parole officer for a violation committed in the officer's presence, the Court turns to consider whether that right was clearly established at the time. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). As discussed above, it is well established that a parolee's Fourth Amendment rights are circumscribed due to the special needs of the parole system. Prior to *People v. Bratton*, 8 N.Y.2d 637 (2007), New York State law on the question of a parole officer's authority to detain and arrest a parolee for violations committed in his presence was not clearly settled. *See, e.g., People v. Dyla*, 536 N.Y.S.2d 799, 803, 806, n.3 (2d Dep't 1988) (characterizing the parole officer's failure to obtain a parole violation warrant prior to arresting the parolee as "a non-constitutional irregularity[,]" and leaving open the question whether a parole violation was an "offense" under section 10.00(1) of the Penal Law). Indeed, both lower courts in *People v. Bratton* held that Wijkowski was authorized to arrest plaintiff without a warrant for a parole violation occurring in his presence.

Moreover, under New York's statutory scheme prior to 1977, a parole officer had authority to "retake a parolee and detain him temporarily without a warrant" where the parole officer had reasonable cause to believe that the parolee had violated a parole condition – even when the violation was not committed in the officer's presence. As part of the reorganization of the Division of Parole in 1977, that scheme was repealed and a new scheme enacted which made no mention of warrantless arrests. Prior to the 2007 decision in *People v. Bratton*, it could reasonably be argued that the new statutory scheme enacted in 1977 did not preclude warrantless arrests for parole violations and that New York courts would approve such arrests.[7]

---

[7]

Prior to 1977, sections 216 and 829(3) of New York Correction Law permitted a parole officer having reasonable cause to believe a parolee has violated the conditions of his parole to detain the parolee temporarily without a warrant. In1977, as part of the reorganization of the Division of

In addition, New York law grants such authority to probation officers, *see* CPL 410.50(4) ("When a probation officer has reasonable cause to believe that a person under his supervision pursuant to a sentence of probation has violated a condition of the sentence, such officer may, without a warrant, take the probationer into custody and search his person."), and federal case law has treated probation and parole as virtually identical for Fourth Amendment purposes.  For example, in the context of a warrantless search of a parolee's room and house, the Second Circuit applied law applicable to a probationer, stating: "Though this case involves searches of a parolee, and not ... a probationer, we hold that, like probation, parole justifies some departure from traditional Fourth Amendment standards." *Grimes*, 225 F.3d at 258 (discussing *Griffin*, 483 U.S. at 873-74; citing *United States v. Cardona*, 903 F.2d 60, 63 (1st Cir. 1990) ("[P]arolees enjoy even less of the average citizen's absolute liberty than do probationers.")).  It is reasonable to conclude that if such authority were read into New York State's parole scheme, it would withstand Fourth Amendment challenge.  *See generally Griffin*, 483 U.S. at 873-74.

Thus, at the time in question, plaintiff's Fourth Amendment right to be free from such an exercise of authority by his parole officer was not clearly established, nor were the contours of his rights in this regard defined with reasonable specificity or clearly foreshadowed.  Nor is there a

---

Parole and its transfer from the Department of Correctional Services to the Executive Department, the New York State Legislature repealed sections 216 and 829(3) of the Correction Law and amended the Executive Law.  The Executive Law, as amended in 1977, provides that a  parole officer having reasonable cause to believe the parolee has violated a condition of parole shall report such fact to a designated officer "and thereupon a warrant <u>may</u> be issued for the retaking of such person."  Executive Law, § 259-i(3)(a)(i) (emphasis added); *see* 9 NYCRR 8004.2.  In other words, the parole officer is required to report the violation, but neither the statute nor the regulation provide that the issuance of the warrant is the exclusive method for making a parole violation arrest.  Nor do they address in any other manner the question of warrantless arrests for parole violations committed in the parole officer's presence.

basis to find on the undisputed facts that the parole officers' conduct here was not reasonably related to the performance of their duties.  On the undisputed facts, Wijkowski and Jones had reasonable cause to believe plaintiff was violating the conditions of parole by refusing to submit to a drug test.  As such, in view of the law at the time, they could reasonably have thought their conduct in detaining and arresting plaintiff for a parole violation committed in their presence was consistent with the rights they are alleged to have violated; thus, qualified immunity shields them from liability.  They are entitled to summary judgment dismissing the thirteenth and fourteenth causes of action.

### Excessive force

In his fourth-I and eleventh causes of action plaintiff claims that Wijkowski and Jones used excessive force in handcuffing him, causing him injury.  The use of force is contrary to the Fourth Amendment "if it is excessive under objective standards of reasonableness."  *Saucier*, 533 U.S. at 202.  To succeed on a Fourth Amendment excessive force claim, a plaintiff must show the amount of force used was objectively unreasonable.  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) ("In determining whether the force used by a police officer was reasonable, the court must ... consider the perspective of the officer at the time of the arrest, taking into account the fact that the officer may have been required to make a split-second decision"); *see Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene[.]").

In addressing the reasonableness of the handcuffing of an arrestee, courts consider the minimal amount of force necessary to maintain custody of the arrestee.  *See Esmont v. City of*

-16-

*New York*, 371 Fed.Supp.2d 202, 215 (E.D.N.Y. 2005).  To be effective, handcuffs must be tight enough to prevent the arrestee's hands from slipping out.  *See id*. at 214.  Placing handcuffs on an arrestee tightly enough to cause nerve damage may constitute excessive force, *see, e.g., Gonzalez v. City of New York*, 2000 WL 516682, *2, *4 (E.D.N.Y.); however, *de minimis* injury will not support a claim.  *See Stefanopoulos v. City of New York*, 2005 WL 525552, *3 (E.D.N.Y.), *reconsid. denied* 2007 WL 160819 (E.D.N.Y.); *Esmont*, 371 Fed.Supp.2d at 215.  Courts also consider the surrounding circumstances, including whether the arrestee was resisting arrest or attempting to flee and whether he requested that the handcuffs be loosened.  *See Gonzalez*, 2000 WL 516682 at *4.

Here, shortly after Wijkowski and Jones handcuffed plaintiff, Watkins and Herson arrived.  Watkins and Herson escorted plaintiff down the stairs and out to the police vehicle, assisted him into the car, and drove him to the county jail, where the handcuffs were removed.  It is undisputed that plaintiff complained the handcuffs were too tight, and that no one loosened them.

In an effort to show injury, plaintiff submits the notes from the Tompkins County Jail medical facility on February 10, 2005, which appear to state: "swelling R + L f/a will re ✓ in a couple of days."  On March 3, 2005, the infirmary notes state: "continued R arm swelling and tenderness in same location from 2/10/05 – radial side of wrists – bruises (illegible) on 2/10/05 now (illegible)."  Plaintiff does not claim that he ever received any treatment for his wrists or that (apart from the visits to the jail infirmary) he ever saw any medical professionals about his wrists.  Plaintiff presents no competent medical evidence of any injury caused by the handcuffing.  Nor does he allege any other force used against him or any other injury.

The minor nature of the injury noted by the jail infirmary nurse and the complete lack of

-17-

other medical evidence warrant summary judgment dismissing these causes of action.  Moreover, viewing the facts in the light most favorable to plaintiff, the circumstances at the time of the handcuffing were that, after Wijkowski came to his room and requested a drug test, plaintiff stated his intention to leave, got dressed, and walked towards Jones in an attempt to leave the room.  Plaintiff admittedly refused to comply with Jones' directions and became agitated.  Plaintiff does not claim that he cooperated with being handcuffed.[8]  Since plaintiff had made plain his intention to leave and does not claim to have been cooperative, the handcuffs had to be sufficiently tight to prevent him from slipping his hands out and fleeing.  Nor does he claim they were left on for an inordinate period of time; according to Vallely's uncontradicted affidavit, only nine minutes elapsed between Wijkowski's telephone call to the police and the time plaintiff was placed in the police vehicle, and plaintiff acknowledges that the handcuffs were removed upon his arrival at the jail.  On the undisputed facts, no rational jury could find Wijkowski and Jones used objectively unreasonable force.

In any event, Wijkowski and Jones are entitled to qualified immunity for their actions in handcuffing plaintiff.  A reasonable officer could have believed the limited force applied was objectively reasonable in light of the circumstances recited above and thus not unconstitutionally excessive in light of clearly established law.  No rational jury could find that the force used was so excessive that no reasonable officer would have made the same choice.  *See Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995).

---

[8]

In the face of Wijkowski's and Jones' detailed and consistent testimony about his vigorous resistance to being handcuffed during a three-to-five minute period, plaintiff offered only carefully worded and occasionally evasive testimony.  He did not explicitly contradict the parole officers' testimony in this respect, nor did he aver that he cooperated with the arrest and handcuffing.

Insofar as plaintiff bases his excessive force claims on the use of the dog, the evidence is undisputed that police officers Watkins and Herson – not Wijkowski or Jones – brought the dog to plaintiff's room.  It is also undisputed that the dog never made contact with plaintiff and did not cause him any injury.  There is no evidence that Wijkowski used his status as plaintiff's parole officer as a pretext to have Watkins and Herson bring in the dog.  Thus, summary judgment is granted dismissing the second and seventeenth causes of action insofar as they are asserted against Wijkowski and Jones.

### *"Stalking horse" theory*

Arguably the amended complaint may also be read to assert a "stalking horse" theory, that is, that the parole officers used their authority to help the police defendants evade the Fourth Amendment's requirements.  *See Newton*, 369 F.3d at 667; *Reyes*, 283 F.3d at 462-63.  The applicability of this theory is sharply limited by the *Newton* and *Reyes* decisions, and no view of the undisputed facts would support such a claim here.

**Abuse of process**

Plaintiff's fifth-I, sixth-I, fourth-II, sixth-II, and seventh causes of action complain of the home visit, request for urine sample, search of his residence, and use of the dog.  These claims in essence assert that defendants abused the processes of their agencies to violate his constitutional rights.[9]  As discussed elsewhere in this Memorandum-Decision and Order, the Court finds that the defendants' conduct in these respects did not violate plaintiff's constitutional rights. These causes of action assert no other cognizable claim and summary judgment is granted dismissing them.

---

[9]

In the sixth II cause of action, plaintiff combines his claim with a retaliation claim.  This aspect of the sixth II cause of action is discussed in the section on retaliation.

-19-

**Equal protection**

Plaintiff's equal protection theory appears to be that parolees are not treated equally to ordinary citizens.  Parolees do not constitute a suspect or quasi-suspect class, requiring heightened scrutiny for the purpose of equal protection analysis.  *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (listing classes receiving heightened scrutiny as race, alienage, national origin, and sex).  To the contrary, a parolee's status justifies impingement upon his rights – in particular his Fourth Amendment rights – that would be unconstitutional if applied to ordinary citizens.  *See Grimes*, 225 F.3d at 258 (citing *Griffin*, 483 U.S. at 873-874).  Thus, due to his parole status, plaintiff cannot make out a claim that he was similarly situated to ordinary citizens in respect to his Fourth Amendment rights, and his equal protection causes of action pertaining to the search of his room – the eighth and ninth causes of action – must fail.  To the extent that the tenth cause of action, pertaining to the use of the dog, may be distinguished from the eighth and ninth causes of action, it does not state a claim of constitutional dimension.  If his equal protection claims are read as "class of one" claims, they must fail because he makes no showing that the defendants intentionally treated him differently from others similarly situated without any rational basis.  *See Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001).   For the same reasons, the conspiracy claims in these causes of action lack merit. When the facts are viewed in the light most favorable to plaintiff, the record establishes Wijkowski's and Jones' entitlement to summary judgment dismissing the eighth, ninth and tenth causes of action against them.

**Retaliation**

Plaintiff's First Amendment claims against Wijkowski and Jones are, in essence, claims

that they retaliated against him for exercising his First Amendment rights in bringing a prior lawsuit against Wijkowski: *Bratton v. Baker, Wijkowski, Sterling Reference Laboratories, and Bour* ("*Bratton v. Baker*"), Case No. 9:03-CV-1458.  *Bratton v. Baker* was commenced on December 8, 2003.  In the amended complaint in that case, filed on January 5, 2004, plaintiff claimed his constitutional rights were violated when his parole was revoked after Wijkowski and others collected and tested his urine without following proper procedure.  Upon defendants' motions, the magistrate judge issued a report and recommendation on March 10, 2005 and a supplemental report and recommendation on April 6, 2005, both recommending dismissal. *Bratton v. Baker* was dismissed on January 26, 2006.

To state an actionable claim for retaliation, plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action. *See Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

Plaintiff's conduct in bringing the *Bratton v. Baker* lawsuit against Wijkowski is protected conduct and thus satisfies the first element of a retaliation claim.  There is, however, no evidence upon which a reasonable factfinder could find the second and third elements were satisfied with respect to Wijkowski and Jones.  With respect to the second element – an adverse action – plaintiff agreed as a condition of his parole to permit home visits by his parole officer, to permit the search of his person and residence, and to "submit to substance abuse testing as directed by" the parole officer.  Thus, as noted above, visiting plaintiff at his residence, requiring him to submit to a urine test, and searching his residence after he refused to submit a urine sample are all reasonably related to the parole officers' performance of their duties and cannot constitute an

-21-

adverse action.

Moreover, there is no evidence suggesting a causal connection between the *Bratton v. Baker* lawsuit, commenced on December 8, 2003, and the events of February 8, 2005.  Plaintiff had been out on parole since January 14, 2005, and supervised by Wijkowski for about three weeks without incident.  In his extensive testimony in his deposition and the final parole revocation hearing, plaintiff acknowledged that neither Wijkowski nor Jones made any reference to the lawsuit throughout the February 8 incident.  Nor does he make any other allegation that would support a finding of a causal connection.  And despite close questioning by plaintiff's lawyer at the final parole revocation hearing, there is nothing in Wijkowski's or Jones' testimony to show a causal connection.  As such, there are no facts in the record upon which a reasonable factfinder could find a causal connection.  Viewed in the light most favorable to plaintiff, the undisputed proof demonstrates that there are no material questions of fact and Wijkowski and Jones are entitled to summary judgment dismissing all retaliation claims against them (first, fifth-II, and sixth-II causes of action).

**Conspiracy**

A number of causes of action (in particular the sixth-II, eighth, ninth, and tenth) allege that defendants conspired to deprive plaintiff of his rights.  These conspiracy claims lack merit because, as discussed above, the conduct relied upon did not infringe plaintiff's rights.  Nor is there support in the record for any conspiracy claim under 42 U.S.C. §§ 1985(3) and 1986; such a claim must be based on conduct "motivated by racial or related class-based discriminatory animus."  *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996).

**Officer Turner**

As against Officer Turner, plaintiff states two causes of action.  In the fifteenth cause of action, plaintiff claims that Turner deprived plaintiff of equal protection and violated the Fourth and Fourteenth Amendments "in assigning Wijkowski to supervise plaintiff when they knew of [Wijkowski's] malice towards the plaintiff and a likelihood that he would retaliate or violate plaintiff's constitutional rights[.]"  In the sixteenth cause of action, plaintiff claims that Turner violated his First, Fourth and Fourteenth Amendment rights "in assigning the defendant Wijkowski to supervise plaintiff and in conspiring with defendant to violate the plaintiff's constitutional rights[.]"  In an affidavit, Turner, then Senior Parole Officer at the Division of Parole's Elmira Office, explains the administrative reasons for assigning Wijkowski as plaintiff's parole officer.

There is no support in the record for a claim that Turner participated in a conspiracy to violate plaintiff's constitutional rights.  Nor is there support for imposing vicarious liability on Turner as Wijkowski's and Jones' supervisor; supervisory liability in a section 1983 action depends on a showing of some personal responsibility and cannot rest on *respondeat superior*. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  If plaintiff's claims against Turner are read as retaliation claims, there is no evidence upon which a reasonable factfinder could find the second and third elements of a retaliation claim were satisfied.  Turner's assignment of a parole officer to supervise a parolee cannot be an adverse action, nor is there any other evidence to support a finding of an adverse action by Turner.  Moreover, there is no evidence of a causal connection between the prior lawsuit and Turner's assignment of Wijkowski, even assuming that Turner knew of the lawsuit.  Without more, the mere fact that plaintiff's lawsuit against Wijkowski, *Bratton v. Baker,* was in existence when Turner assigned Wijkowski is insufficient to

-23-

permit a reasonable factfinder to find a causal connection between the lawsuit.  Nor is there any basis in the record for any other claim against Turner.  Viewed in the light most favorable to plaintiff, the undisputed proof demonstrates that there are no material questions of fact and Turner is entitled to summary judgment dismissing all claims against him.

**Conclusion – Turner, Wijkowski, and Jones**

Viewed in the light most favorable to plaintiff, the undisputed proof demonstrates that there are no material questions of fact and Turner, Wijkowski, and Jones are entitled to summary judgment dismissing all claims.

## MOTION BY HERSON, VALLELY AND WATKINS

In the amended complaint, plaintiff asserts claims against three members of the Ithaca Police Department, defendants Herson, Vallely, and Watkins.  He principally complains of their actions in bringing the dog to his residence and using it to threaten him and conduct a search.

**Fourth Amendment**

The second and third causes of action allege that Watkins and Herson brought the dog to plaintiff's residence and conducted a warrantless search in violation of his Fourth Amendment rights.  The law permits cooperation between parole officers and police officers as long as the parole officers are pursuing legitimate parole-related objectives.  *See Newton*, 369 F.3d at 666-67; *Reyes*, 283 F.3d at 464.  It is undisputed that Watkins and Herson arrived at plaintiff's residence in response to Wijkowski's telephone call to assist Wijkowski and Jones in a home visit that had escalated to a potentially violent situation.  The undisputed facts also show that Watkins and Herson used the dog to assist the parole officers in a parole search after plaintiff had avoided submitting to a drug test.  Watkins affirmed that the dog performed a cursory narcotics scan of the

-24-

room, the results of which were negative.  The undisputed facts establish that Watkins and Herson

acted in cooperation with the legitimate supervision objectives of the parole officers.  As such,

there was no Fourth Amendment violation.  *See Newton*, 369 F.3d at 667; *Reyes*, 283 F.3d at 464.

For the same reasons, the eighth and ninth causes of action, insofar as they allege a conspiracy to

conduct a warrantless search, lack merit.

        Plaintiff also complains that Watkins and Herson used the dog to threaten and intimidate

him.  In using the dog to help maintain control over the situation, it was reasonable for the

officers to allow a limited degree of intimidation for the purpose of deterring plaintiff from

attempting an assault or an escape.  In doing so, Watkins and Herson were acting reasonably in

assisting the parole officers, and their conduct did not offend the Fourth Amendment.  Moreover,

the dog never made contact with plaintiff or caused him injury.  Nor is there evidence that the

situation was unreasonably prolonged.  To the contrary, Watkins affirms that plaintiff was

removed from the premises "a few minutes" after Watkins arrived; plaintiff adduces no evidence

to the contrary.  Under the circumstances here, viewing the facts in the light most favorable to

plaintiff, no reasonable jury could find that the officers' conduct with respect to the dog

constituted excessive force or otherwise infringed plaintiff's Fourth Amendment or other

constitutional rights.  The fifth-II, ninth, tenth and seventeenth cause of action and other causes of

action insofar as they complain of the use of the dog lack merit.

        Plaintiff's twelfth cause of action against Watkins and Herson is an excessive force claim

based on their failure to prevent Wijkowski and Jones from using excessive force in handcuffing

him.  Law enforcement officers have "an affirmative duty to intervene to protect the

constitutional rights of citizens from infringement by other law enforcement officers in their

presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994).  Inasmuch as this Court has held that Wijkowski and Jones did not use excessive force, there can be no claim against Watkins and Herson for failing to prevent them from doing so.  Further, to the extent that the fourth-I cause of action alleges that Watkins and Herson used excessive force in handcuffing plaintiff, this lacks merit because plaintiff himself does not allege that Watkins and Herson participated in handcuffing him; rather, they arrived after he was already handcuffed.  In any event, as already stated, no excessive force was used.  Thus, summary judgment is granted dismissing the fourth-I and twelfth causes of action against Watkins and Herson.

**Abuse of process**

In the fifth-I cause of action, plaintiff claims Watkins and Herson abused the process of their agency to violate his constitutional rights.  This cause of action lacks merit because the Court has found no constitutional violations on their part.  For the same reason, the sixth-II cause of action alleging a conspiracy that constituted an abuse of process lacks merit.

**Retaliation**

Plaintiff's fifth-II cause of action alleges that Watkins and Herson used the dog to threaten plaintiff and search his room in order to retaliate against plaintiff because of his prior lawsuit against Wijkowski.  The undisputed evidence, viewed most favorably to plaintiff, would not permit a reasonable finder of fact to find any causal connection between the prior lawsuit and Watkins' and Herson's actions.  For the same reason, and because plaintiff's retaliation claim against Wijkowski and Jones lacks merit, plaintiff's sixth-II cause of action for conspiracy to retaliate, lacks merit.  The fifth-II and sixth-II causes of action are dismissed.

**Equal protection**

-26-

The eighth, ninth and tenth causes of action claim plaintiff was denied equal protection when Watkins and Herson conspired with Wijkowski and Jones to use plaintiff's status as a parolee to harass him with the dog and conduct a warrantless search.  The Court rejects these claims on the same grounds as it rejects the equal protection claims against Wijkowski and Jones.

**Claims against Vallely**

Edward Vallely, Acting Chief of Police of the Ithaca Police Department, states in an affidavit that he had no personal involvement with plaintiff or his processing, except to relay Wijkowski's request for assistance, dispatch vehicles in response to the request, and check the scene to insure that order had been restored.  There is no evidence of personal involvement or any other basis for liability on the part of Vallely.  For this reason, and for the reasons discussed in connection with the sixth-II and eighth causes of action, all claims against him are dismissed.

**Conclusion - Vallely, Watkins, and Herson**

To the extent that certain causes of action include claims based on conspiracy or stalking-horse theories, they lack merit for the reasons discussed in connection with the analogous claims against Turner, Wijkowski, and Jones.  Viewed in the light most favorable to plaintiff, the undisputed proof demonstrates that there are no material questions of fact and Vallely, Watkins, and Herson are entitled to summary judgment dismissing all claims against them.

## CONCLUSION

Due to the prolixity of the amended complaint, many causes of action allege a number of overlapping claims, and plaintiff's conspiracy allegations further complicate the task of sorting out the claims.  Particularly in view of plaintiff's *pro se* status, the Court has made every effort to identify and address all possible claims.  Viewed in the light most favorable to plaintiff, the

undisputed proof demonstrates that there are no material questions of fact.  Defendants are

entitled to summary judgment dismissing all claims.

It is therefore

**ORDERED** that the motion by Parole Officer Turner, P.O. Wijkowski, and P.O. Jones for

summary judgment (Dkt. No. 102) is granted; and it is further

**ORDERED** that the motion by Sgt. Herson, Sgt. Vallely, and Officer Watkins for

summary judgment (Dkt. No. 104) is granted; and it is further

**ORDERED** that the amended complaint is dismissed in its entirety on the merits.

**IT IS SO ORDERED**.

April 14, 2008
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge